IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
UNITED STATES OF AMERICA      *
                              *
v.                            *    Civil No. WMN-14-3072
                              *    Criminal No. WMN-09-0611
RYAN HOLNESS                  *
                              *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Before the Court is a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence filed by Defendant Ryan Holness.  ECF No. 132.  Because the pleadings, files, and records conclusively show that Petitioner is not entitled to relief, the Court concludes that an evidentiary hearing is not necessary, United States v. Diaz, 547 Fed. Appx. 303, 304 (4th Cir. 2013) (citing United States v. Witherspoon, 231 F.3d 923, 925-27 (4th Cir. 2000)), and the motion will be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

After a ten day jury trial, Defendant was convicted of three counts of the four count Second Superseding Indictment; Count One – Interstate Domestic Violence in violation of 18 U.S.C. § 2261; Count Two – Obstruction of Justice in violation of 18 U.S.C. § 1512(c)(2); and Count Three – Attempted Witness Intimidation in violation of 18 U.S.C. § 1512(b)(1).[1]  Prior to

---

[1] Count Four, for Passport Fraud, was severed prior to trial and was subsequently dismissed on a motion by the United States.

sentencing, the Court granted a new trial as to Count Two, after which, the government advised it would dismiss that count.  On June 9, 2011, the Court sentenced Defendant to life imprisonment as to Count One and to a term of 20 years as to Count Three, to be served concurrent to the sentence for Count One.  Defendant's conviction and sentence were affirmed on appeal on February 11, 2013.  United States v. Holness, 706 F.3d 579 (4th Cir. 2013). The Supreme Court denied certiorari on October 7, 2013, and Defendant filed his timely motion to vacate on September 29, 2014.

In its opinion affirming Defendant's conviction and sentence, the Fourth Circuit set out in significant detail the overwhelming evidence presented to the jury and on which the jury based its finding of guilt.  706 F.3d at 579-88.  That level of detail will not be repeated here.  Briefly stated, however, the facts relevant to the instant motion are as follows.  Early in the morning of June 5, 2009, on Maryland's Eastern Shore, Defendant murdered his wife, Serika Dunkley, by stabbing her and leaving her in a field.  Defendant attempted to make the murder appear to be the result of a carjacking by giving himself a superficial stab wound and by taping himself up with duct tape.  Defendant had an accomplice, Dellando Recardo Campbell, who had traveled from New York City with Defendant and Ms. Dunkley and who then proceeded to drive Defendant's car to

Washington, D.C. to abandon it there so that it would later be found by the police.[2]  After allowing sufficient time for Campbell to drive the car to D.C., Defendant knocked on the door of a nearby house and reported that he had been carjacked, knocked unconscious, and his wife had been stabbed and left in a nearby field.  The residents of the house called 911.

A Kent County Deputy Sheriff and Maryland State Troopers arrived at the scene and interviewed Defendant.  Defendant was transported to a local hospital for treatment and, later that morning, was taken to a Maryland State Police Barracks where he was interviewed by two members of the Maryland State Police homicide unit, Sergeant Stephen Hall and Sergeant Michael Smith. While they were interviewing Defendant, another officer arrived at the scene with a bloodhound which was used to trace Defendant's path.  The path traced by the bloodhound was inconsistent with Defendant's version of events.  While Defendant claimed that, after regaining consciousness, he travelled north to the house from which the 911 call was made, the path traced by the bloodhound indicated that Defendant first

---

[2] Years later, Campbell was apprehended, indicted, and ultimately entered a guilty plea in this Court for Interstate Domestic Violence Resulting in the Death of a Spouse and was sentenced to a 360 month term of imprisonment.  United States v. Campbell, Crim. No. 14-058 (D. Md.).

went south from the crime scene to the front and back doors of a modular home and then to a bridge over the Chester River.

Sergeants Hall and Smith returned with Defendant to the crime scene and Defendant essentially repeated his earlier story.  Evidence developed in the investigation, however, further undermined Defendant's version of events.  The resident of the modular home south of the crime scene reported that someone knocked on her front and back doors at the time Defendant would have been unconscious and a witness reported seeing a man matching Defendant's description near the bridge. Furthermore, Defendant's wounds and the physical evidence found on Defendant's person (and evidence not found which should have been found) were inconsistent with his version of events.[3] Defendant was placed under arrest.

On July 2, 2009, a Maryland state grand jury indicted Defendant, charging him with first-degree and second-degree murder.  For a period of time, Defendant was held in a county detention center with a cellmate, Stephen McGrath.  On August 18, 2009, McGrath sent a letter to the Kent County prosecutor stating that Defendant had told him "some interesting stuff

---

[3] Other incriminating evidence was subsequently developed.  An examination of a personal computer recovered from Defendant's apartment revealed that, less than a week before the alleged carjacking, someone searched for Apex and Greyhound bus schedules for stops near where Defendant's car was recovered in Washington.

which led [McGrath] to believe [Defendant] actually killed his
wife." After relating some of that information, McGrath ended
the letter with the post script, "[i]n short he killed his wife
cause she found out he was cheating . . . ." Sergeant Hall met
with McGrath on August 31, 2009, and McGrath clarified that
Defendant had never made a specific admission of murdering his
wife but the post script was just McGrath's interpretation of
the information given to him by Defendant. Sergeant Hall
instructed McGrath that he could reinitiate contact with
Defendant should Defendant volunteer additional information, but
cautioned him not to ask Defendant any direct questions.

Shortly thereafter, Defendant asked McGrath to help him
write a letter which would purport to be from the carjacker
expressing remorse. The letter would be delivered to the
Washington Post for the purpose of giving the impression that
the carjacker was still at large and was to be handwritten by
McGrath so as not to implicate Defendant. McGrath relayed the
plan to Sgt. Hall and Sgt. Hall provided McGrath with a
recording device that McGrath kept hidden in his pillow. On
October 1, 2009, McGrath provided Sgt. Hall with one page of a
draft of a letter prepared by Defendant and a recording of the
contents of the remainder of that letter. Sgt. Hall used that
information to obtain a search warrant of Defendant's cell and

the search recovered an initial draft of the letter in McGrath's handwriting.

McGrath was released from custody on October 10, 2009.[4] Shortly thereafter, Defendant was placed in solitary confinement after he was found in possession of a shank.  On the wall of his new cell, Defendant scrawled, "Stephen Scott McGrath, rat snitch" along with McGrath's home address and telephone number. Defendant's scrawling of this on the wall of his cell was the basis of the attempted witness intimidation charge.

On October 13, 2009, Sergeant Hall met with representatives of the United States Attorney's office to explore the possibility of transferring the case for prosecution.  The discussion proved fruitful and, on November 24, 2009, a federal grand jury returned an indictment against Defendant for Interstate Domestic Violence.  Six days later, the state charges against Defendant were dropped.  On March 1, 2011, the operative Second Superseding Indictment was filed.  At the trial, McGrath gave testimony about what Defendant had related to him about the events of June 5, 2009, and about the drafting of the sham letter.  McGrath also testified that Defendant told him that he had thrown the murder weapons into the Chester River.

---

[4] McGrath had made some effort to use his cooperation to negotiate a shorter period of custody but was unsuccessful in that effort.  McGrath served his full sentence, minus good-time credits.

In his original Motion to Vacate filed on September 29, 2014, Defendant raised three challenges to his conviction and sentence.  First, Defendant argues that his trial counsel was ineffective for failing to challenge the "federal nexus" requirement of 18 U.S.C. § 1512(b)(1).  Second, Defendant suggests that his due process rights were violated when he was sentenced to a term of life imprisonment without parole based on a factual finding made by the Court and not by the jury, in violation of the rule announced in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) and Alleyne v. United States, 133 S. Ct. 2151 (2013).  Third, Defendant argues that the admission of McGrath's testimony about conversations and events that occurred after McGrath met with Sgt. Hall violated his Sixth Amendment rights, referencing Massiah v. United States, 377 U.S. 201 (1964).  With his § 2255 motion, Defendant also filed a "Motion for Leave to File Amended Motion Pursuant to 28 U.S.C. § 2255," ECF No. 133, in which he indicated that, after the completion of his review of the files and records, he would seek to amend his motion to add a fourth ground which he presented simply as: "because of a fraudulent marriage that is relevant to the issue of Federal nexus under 18 U.S.C. § 2261(a)(1)."

On January 5, 2015, Defendant filed an additional pleading stating that "Pertinent and Significant new case law" had come to his attention that supports his second ground for relief,

citing Burrage v. United States, 134 S. Ct. 881 (2014).  ECF No.
137.  On January 29, 2015, Defendant submitted what he captioned
as an "Amendment to Placeholder Motion."  ECF No. 138.  In that
pleading, Defendant asked that the Court "take judicial notice
that he is unable to obtain needed documents relating to a
'fraudulent marriage' (ground number four)" and asked that this
ground "be dismissed without prejudice so that if, and when, he
receives the necessary document he can re-instate the claim."
Id. at 2.  Defendant also asked to conduct discovery, proffering
that "he has reason to believe that the jurisdictional nexus,
that is, a valid marriage in this case was not proven beyond a
reasonable doubt."  Id. at 3-4.  He also suggests, without any
explanation, that "the Government may have failed to disclose
exculpatory and favorable evidence to Petitioner, relating to
Petitioner's unindicted co-defendant Delando R. Campbell."  Id.
at 4.  Finally in that pleading, Defendant argues that his
counsel was ineffective for failing to argue that Sgt. Hall was
not properly qualified as an expert to testify regarding cell
phone tracking.  Id. at 4-5.

After the Government filed its opposition to Defendant's
motion, Defendant filed a brief reply memorandum on November 24,
2015.  ECF No. 145.  On February 10, 2016, Defendant filed a
"Motion Requesting Leave of the Court to Amend 28 U.S.C. § 2255
Pursuant to Rules of Civil Procedure, 15."  ECF No. 146.  This

pleading purports to inform the Court of more "Pertinent and Significant new case law," citing <u>Hurst v. Florida</u>, 136 S. Ct. 616 (Jan. 12, 2016) and <u>Montgomery v. Louisiana</u>, 136 S. Ct. 718 (Jan. 25, 2016).  Defendant also suggested that Campbell's plea agreement gives further support to his <u>Apprendi</u> claim.  Finally, on September 30, 2016, Defendant filed a "Notice of Subsequent Authority," this time directing the Court's attention to the Fourth Circuit's decision in <u>In re Hubbard</u>, 825 F.3d 225 (4th Cir. June 8, 2016).  ECF No. 147.

## II. DISCUSSION

### A. Alleged Ineffective Assistance: Failure to Challenge Federal Nexus Requirement of 18 U.S.C. § 1512(b)(1)

Ineffective assistance of counsel claims under the Sixth Amendment are examined under the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To succeed under <u>Strickland</u>, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness and (2) he suffered actual prejudice.  <u>Id.</u> at 687.  The first <u>Strickland</u> prong requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" <u>Lewis v. Wheeler</u>, 609 F.3d 291, 301 (4th Cir. 2010) (quoting <u>Strickland</u>, 466 U.S. at 688).  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." <u>Strickland</u>, 466 U.S. at 689.

The second prong of <u>Strickland</u> requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. <u>Strickland</u>, 466 U.S. at 687.  In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.  If it is clear the petitioner has failed to satisfy either prong of the <u>Strickland</u> standard, a court need not inquire into whether he satisfied the other. <u>Id.</u> at 697.

Defendant contends that "it was ineffective for trial counsel not to contest the federal nexus requirement in 18 U.S.C. § 1512(b)(1) and require [a jury] instruction necessitating nexus be established beyond of reasonable doubt." ECF No. 132-1 at 6.  Section 1512(b)(1) provides that "[w]hoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to-- (1) influence, delay, or prevent the testimony of any person <u>in an official proceeding</u>;" shall be fined under this title or imprisoned not

more than 20 years, or both. 18 U.S.C. § 1512 (b)(1) (emphasis
added). An "official proceeding" is defined as a "a proceeding
before a judge or court of the United States, a United States
magistrate judge, a bankruptcy judge, a judge of the United States
Tax Court, a special trial judge of the Tax Court, a judge of the
United States Court of Federal Claims, or a Federal grand jury."
18 U.S.C. § 1515(a)(1)(A). Thus, to violate § 1512(b)(1), a
defendant must be seeking to influence a <u>federal</u> proceeding.
Defendant asserts that, because he was only facing state charges at
the time the intimidating words were scrawled on his cell wall,
there was no federal nexus to this action.

To satisfy the federal nexus requirement, however, the federal
proceeding "need not be pending or about to be instituted at the
time of the offense," 18 U.S.C. § 1512(f)(1), but it must be
forseeable. <u>Arthur Andersen LLP v. United States</u>, 544 U.S. 696,
708 (2005);[5] <u>see also</u> <u>United States v. Kaplan</u>, 490 F.3d 110, 125
(2nd Cir. 2007) (holding that a "knowingly ... corrupt persuader"
must believe that his actions are likely to affect a particular,
existing <u>or foreseeable</u> official proceeding") (emphasis added).
Here, the government has identified numerous aspects of

---

[5] <u>Arthur Andersen</u> addressed the "federal nexus" requirement in
different provisions of § 1512, § 1512(b)(2)(A) and (B). While
the Fourth Circuit has not had the occasion to apply <u>Arthur
Andersen's</u> nexus requirement to charges under § 1512(b)(1),
other courts have, including the Second Circuit in <u>Kaplan</u>. This
Court will assume the applicability of <u>Arthur Andersen's</u> federal
nexus analysis to Defendant's conviction.

Defendant's crime that would have made a federal prosecution highly foreseeable.  Defendant was an active member of the United States armed forces at the time of the crime and was already under investigation for passport fraud.  The crime involved transportation of the victim over state lines, the transport into and abandonment of Defendant's car in the District of Columbia, and the intended use of the U.S. Mail to send the letter of the purported remorseful carjacker.

Furthermore, the jury was instructed on the need to find a federal nexus in the jury instructions and, in light of the guilty verdict, of necessity found such a nexus.  The Court gave the jury the following instructions:

> [Section 1512 (b)(1)] is designed to protect persons who are <u>victims of federal crimes</u>, persons who may be called to testify or give evidence <u>in a federal proceeding</u>, whether it's civil or criminal, and persons who have information about <u>federal crimes</u>. And the integrity <u>of the federal system of justice</u> depends on the cooperation of such victims and potential witnesses.
>
> Now, in order to prove the defendant guilty of this charge in Count Three, the government must prove the following elements beyond a reasonable doubt: First, that on or about the date charged, the defendant knowingly used intimidation or threatened or corruptly persuaded Steven McGrath, or attempted to do so, or engaged in misleading conduct toward Steven McGrath; secondly, that the defendant acted knowingly and with the intent to influence or delay or prevent the testimony of Steven McGrath in an official <u>federal</u> proceeding.

Jury Instructions at 25-26 (emphasis added).

12

The Court explained further, "the law does not require that the _federal_ proceeding be pending at the time of the attempted intimidation, _as long as the proceeding was foreseeable so that the defendant knew that his actions were likely to effect that proceeding_." _Id._ at 27-28 (emphasis added).  Given that the jury was charged with the same instruction that Defendant now argues his counsel should have advanced and found Defendant guilty after having been given that instruction, the Court finds that Defendant has failed to satisfy either prong of the _Strickland_ standard.

## B. Alleged Apprendi/Alleyne Violation

Defendant contends that the Interstate Domestic Violence provision under which he was convicted, 18 U.S.C. § 2261(a)(1), is facially unconstitutional under _Apprendi_ and _Alleyne_.  ECF No. 132-1 at 7.  He asserts that § 2261(a)(1) prescribes two different terms of imprisonment, a lower term for "any term of years" and an upper term of "life without parole," and also authorized the judge, and not the jury, to make the factual finding to expose the defendant to that upper term.  _Id._ at 9. Because the government argued at sentencing that a sentence of life without parole was appropriate in light of the premeditated and deliberate nature of Defendant's actions, Defendant suggests that this resulted in a sentence based upon a factual finding of premeditation, a factual finding not made by the jury.

13

Defendant's argument reflects a misunderstanding of the holdings of Apprendi and Alleyne, of § 2261, and the basis of his sentencing.

The holding of Apprendi was that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Alleyne extended the rule of Apprendi to the imposition of mandatory minimum sentences and to statutes that have an escalating range of penalties based on proof of specific additional facts, concluding that any facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of the crime that a jury must find beyond a reasonable doubt. Alleyne, 133 S. Ct. at 2160.

Section 2261 provides, in pertinent part that "[a] person who travels in interstate or foreign commerce . . . with the intent to kill, injure, harass, or intimidate a spouse, intimate partner, or dating partner, and who, in the course of or as a result of such travel or presence, commits or attempts to commit a crime of violence against that spouse, intimate partner, or dating partner, shall be punished as provided in subsection (b)." 18 U.S.C. § 2261(a)(1). Subsection (b) provides for various penalties based upon the injury suffered by the victim. Relevant to the case at bar, it provides that "if death of the

14

victim results," the defendant shall be "imprisoned – (1) for
life or any term of years." Id. § 2261(b)(1).

Here, Count One of the Second Superseding Indictment
alleged that Defendant "traveled in interstate commerce with the
intent to kill and injure a spouse, to wit: Serika Dunkley
Holness; and in the course of and as a result of such travel,
committed and attempted to commit a crime of violence against
that spouse, to wit: murder; resulting in the death of the
victim, Serika Dunkley Holness." ECF No. 42 at (emphasis
added). The jury was instructed that, in order to find guilty
of Count One, the government had to prove each of the following
elements:

> The first element being that the victim was a spouse
> of the defendant. Second, that the defendant traveled
> in interstate commerce; that is, crossing state lines.
> Third, that the defendant traveled in interstate
> commerce with the intent to kill or injure the victim.
> And fourth, that in the course of or as a result of
> such travel, the defendant committed or attempted to
> commit or aided and abetted the commission of a crime
> of violence against the victim. And fifth, in this
> instance, the death of the victim resulted.

Jury Instructions at 18 (emphasis added). The jury found
Defendant guilty as to Count One and, in so doing, must have
made the factual finding that the death of Ms. Dunkley resulted
from Defendant's crime of violence. Accordingly, it was that
factual finding of the jury, and not any factual finding of the
Court, that exposed Defendant to a sentencing range that

15

included the possibility of life without parole.  That the
Court, in the exercise of its discretion, imposed such a
sentence does not implicate <u>Apprendi</u> or <u>Alleyne</u>.

None of the cases identified by Defendant as "Pertinent and
Significant new case law" yield a different result.  As
summarized by Defendant, the Supreme Court in <u>Burrage</u> held that
"without 'death results' findings the defendant must be
sentenced to lesser-included offense."  ECF No. 137.[6]  <u>Burrage</u>
construed language in a statute that provided a mandatory
minimum sentence where "death results" from the use of a
controlled substance distributed by the defendant.  The issue
before the Court was determining the appropriate causation
standard to be applied to the proof that the controlled
substance distributed by the defendant, in that case, heroin,
resulted in the death of the victim.  The Court held that "at
least where use of the drug distributed by the defendant is not
<u>an independently sufficient cause</u> of the victim's death or
serious bodily injury, a defendant cannot be liable under the
penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless
such use is a "but-for" cause of the death or injury."  134 S.

---

[6] In addition to arguing that <u>Burrage</u> has no relevance to
Defendant's motion, the government notes that Defendant's
invocation of <u>Burrage</u> in support of his claim is untimely.
<u>Burrage</u> was decided on January 27, 2014, nine months prior to
Defendant's filing of his original motion under § 2255.  Thus,
it was not "new" case law.

Ct. at 892 (emphasis added).  The Court then overturned the defendant's conviction, having noted that the victim had been taking heroin in combination with other drugs and there was no evidence that the victim's heroin use "was an independently sufficient cause of [the victim's] death.  No expert was prepared to say that [the victim] would have died from the heroin use alone."  Id. at 890.

Here, there was never any dispute as to the cause of Ms. Dunkley's death.  She was stabbed multiple times and left in a field.  The medical examiner's detailed report and testimony conclusively established that the sole cause of Ms. Dunkley's death was the infliction of those stab wounds.  Unlike Burrage, there was no other possible cause of death proffered by Defendant or suggested by the evidence.

The cases cited in Defendant's additional submissions are also inapposite.  The Supreme Court in Hurst held that Florida's capital sentencing scheme, under which an advisory jury makes a recommendation to a judge, and the judge makes the critical findings needed for imposition of a death sentence, violates the Sixth Amendment right to jury trial.  Here, the jury made the factual finding, not an advisory recommendation, that death resulted from Defendant's crime of violence.  Montgomery addresses the retroactive effect of new rules of constitutional law but here there is no new law to apply.  The portion of the

Fourth Circuit's decision in <u>Hubbard</u> cited by Defendant, <u>see</u> ECF No. 147 at 1, addresses the weight given to the Sentencing Guidelines, an issue not relevant here.

Defendant also points to the plea agreement of his co-conspirator as somehow lending support to his <u>Apprendi</u>/<u>Alleyne</u> argument.  In that plea agreement, the elements of the offense to which Campbell pled guilty included that "the Defendant, or the person the Defendant aided and abetted, committed a crime of violence against the spouse, to wit, first degree premeditated murder."  Crim. No. 14-058, ECF No. 27 at 2.  While it happened to be that the crime of violence to which Campbell pled was "first degree premeditated murder," nothing in that document supports Defendant's assertion that "premeditation" is an "element necessary to support [Defendant's] life sentence."  ECF No. 146 at 1.  In fact, the "Penalties" provision of Campbell's plea agreement specifically states that "[b]ecause the violation of 18 U.S.C § 2261(a)(1) to which the Defendant is pleading guilty <u>resulted in the death of the victim</u>, Serika Dunkley Holness, the maximum sentence provided by 18 U.S.C. § 2261(b)(1) is life imprisonment . . . ."  Crim. No. 14-058, ECF No. 27 at 2 (emphasis added).  Significantly, while noting that Campbell was exposed to the possibility of a term of life imprisonment because of the resultant death of the victim of the premeditated crime of violence, Campbell received a lesser sentence.

## C. Massiah Violation

Defendant argues that any evidence arising from conversations or activities between Defendant and McGrath after McGrath's initial meeting with Sgt. Hall on August 31, 2009, should have been suppressed under Massiah v. United States and not presented to the jury.  In Massiah, the Supreme Court held that the defendant "was denied the basic protections" of his Sixth Amendment right to counsel by the admission of uncounseled post-indictment statements obtained from a listening device supplied by the police to a cooperating codefendant.  377 U.S. at 206.  Massiah was extended to the prison environment in Henry v. United States, 590 F.2d 544 (4th Cir. 1978), where the Fourth Circuit held that the defendant's Sixth Amendment right to counsel was violated when the government enlisted an inmate informant to engage the defendant, who proceeded to make incriminating statements concerning his participation in an armed robbery for which he was awaiting trial.  590 F.2d at 546-47.

Defendant's Massiah argument was raised before this Court in a pretrial motion and before the Fourth Circuit on appeal. This Court held that McGrath's testimony was admissible because 1) the right to counsel secured by the Sixth Amendment has been deemed "offense specific" and Defendant's statements to McGrath occurred prior to the federal indictment, and, 2) that absent

collusion, there was no Sixth Amendment violation that barred admission of Defendant's post-meeting statements.  On appeal, the Fourth Circuit held that this Court correctly concluded that the Sixth Amendment right simply did not attach to the federal charges after finding that there was no suggestion in the record that there was any collusion between state and federal authorities.  706 F.3d at 591.

Addressing an issue not raised in this Court, the Fourth Circuit went on to consider whether Defendant's Fifth Amendment rights were implicated in the interaction between Defendant and McGrath after the initial meeting with Sgt. Hall.  Presuming that there was a Fifth Amendment violation, the court went on to conclude that, if the post-meeting evidence was admitted in error when it should have been suppressed, any error was "harmless beyond a reasonable doubt."  Id. at 598.  The court found that "[r]emand to develop the material facts relating to custody and interrogation [] is unnecessary" in that the remaining evidence of Defendant's guilt "went far beyond sufficiency."  Id. at 598, 600.

Defendant argues in the instant motion that an evidentiary hearing is necessary to determine if there was collusion between the state and federal authorities.  ECF No. 132-1 at 11.  The Fourth Circuit, however, has already determined that such an inquiry is unnecessary.

**D. Fraudulent Marriage**

As noted above, Defendant makes several references in his various submissions advancing the need for discovery relating to a potential claim of "fraudulent marriage." Defendant provides no explanation, however, as to the foundation for such a claim. Given that it is his own marriage that he is referencing, it would be expected that he would be able to convey at least the general nature of that claim.

Rule 6(a) of the Rules Governing Section 2255 Proceedings states that "[a] party may invoke the processes of discovery . . . if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." In <u>United States v. Roane</u>, 378 F.3d 382, 402-03 (4th Cir. 2004), the Fourth Circuit cited the following as the proper standard in considering such claims: "good cause for discovery exists when a petition for habeas corpus establishes a prima facie case for relief." (internal citations omitted). Discovery is warranted "where <u>specific allegations</u> before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." <u>Bracy v. Gramley</u>, 520 U.S. 899, 908-09 (1997) (emphasis added).

Here, as to his fraudulent marriage argument, Defendant has offered no specific allegations at all, much less established a

prima facie case that he would be entitled to any relief on this ground.

**E. Sergeant Hall as an Expert**

In his "Amendment to his Placeholder Motion," Defendant suggests that "trial counsel was ineffective for failure to argue that Sergeant Hall's testimony should have been excluded because he wasn't properly qualified as an expert witness." ECF No. 138 at 4. The particular testimony at issue is Sgt. Hall's use of cell tower data to map Defendant's route on the day of the crime. In addition to being untimely, this argument is wholly without merit. First, counsel actually did object to this testimony at trial and the objection was overruled. Furthermore, permitting Sgt. Hall to give this testimony was proper in that the Fourth Circuit has held that the simple mapping of cell towers does not require expert testimony. United States v. Graham, 796 F.3d 332, 364-65 (4th Cir. 2015), vacated on other grounds, United States v. Graham, 824 F.3d 421 (4th Cir. 2016)(en banc). Finally, even if the admission of this testimony was in error, that error was harmless. The route traveled by Defendant on June 5, 2009, was never in dispute. Defendant's carjacking ruse was premised on his traveling that route and that route was also established by the series of activations on Defendant's EZ Pass transponder.

22

The Court finds no error or prejudice related to Sgt. Hall's testimony regarding the route traveled by Defendant.

## F. Certificate of Appealability

Because the Court will deny Defendant's motion under § 2255, it must determine whether a certificate of appealability should issue. A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). As reasonable jurists would not find this Court's dismissal of petitioner's Section 2255 motion debatable, a certificate of appealability will not issue.

For all of the above stated reason, the Court will deny Defendant's motion under § 2255, as well has his motion to amend that motion. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge
DATED: March 27, 2017